UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

DAVID L JUMP     CIVIL ACTION NO. 01-cv-2039

VERSUS     MAGISTRATE JUDGE HORNSBY

RORY S MCFARLAND ET AL

**MEMORANDUM RULING**

**Introduction**

This case is a dispute among parties with competing judgments and interests in an offshore mineral lease, OCS-310, and considerable revenues from it that have been deposited in the registry of the court. The case was previously assigned to Judge Stagg and then Chief Judge Hicks. The complexity of the case prevented a prior resolution, and the parties were unable to resolve their claims by mediation. The parties filed written consent to have the case decided by the undersigned magistrate judge, and the case was referred pursuant to 28 U.S.C. § 636(c). Before the court are multiple motions. Docs. 330, 332, 333, 334, 350 & 359. For the reasons that follow, Joslin's Motion for Partial Summary Judgment (Doc. 330) will be granted, and the other motions will be denied.

**Relevant Facts**

In 1984, Rory S. McFarland pledged a $2.5 million note to the Bank of Commerce of Shreveport, Louisiana. McFarland secured the note with a mineral lease mortgage and an assignment of production from his interest in the mortgaged leasehold and mineral

interests. The Bank of Commerce failed in 1986, and the FDIC took over the bank's assets, including the pledged 1984 note, mortgage, and assignment.

In August 1990, Bank One Equity Investment, Inc. obtained a judgment, "the Bank One judgment," against McFarland in Louisiana state court. Bank One recorded its judgment in various Louisiana parishes between March and August of 1991. (Bank One later released its mortgage, so its 1990 judgment is no longer at issue except as it relates to the history of the litigation.)

On October 1, 1991, David L. Jump obtained a money judgment against McFarland, "the Jump judgment," in the Western District of Colorado for more than $5,000,000. Jump registered his judgment in the Western District of Louisiana on June 26, 1992, then he recorded the judgment in various Louisiana parishes.

On October 31, 1991, the FDIC filed suit in the Western District of Louisiana, 91 CV 2351, to collect the debt owed by McFarland to the Bank of Commerce and enforce the 1984 mortgage and assignment. Jump intervened and sought the proceeds from the mineral leases that had been paid into the court registry. Jump argued that the 1984 assignment to the Bank of Commerce did not encompass a specific offshore lease, OCS–310, and that his earlier-recorded money judgment acted as a lien on OCS–310.

In 1993, the district court ordered McFarland to pay the FDIC from the proceeds in the court registry and recognized the FDIC's 1984 mortgage as the first lien. The court also held that the 1984 assignment did not include OCS–310 and ordered McFarland to pay the proceeds of that lease to Jump and Bank One. The FDIC recorded its 1993 judgment for more than $1,733,000 in various Louisiana parishes. The Fifth Circuit affirmed the

judgment in relevant part. Federal Deposit Ins. Corp. v. McFarland, 33 F.3d 532 (5th Cir. 1994).

The FDIC reinscribed the 1984 McFarland mortgage and assignment in various Louisiana parishes in July 1995 (more than ten years after it was executed). In 1997, the FDIC assigned the 1984 McFarland mortgage and assignment, as well as its 1993 judgment, to the Dennis Joslin Company ("Joslin").

Jump, in 1996, used his Colorado judgment to foreclose on McFarland's royalty interest in the offshore lease, OCS–310. A marshal's sale was held, and Jump purchased the royalty interest in OCS–310 for $1,000. In 1997, Jump transferred the interest in OCS-310 to American Milling, a company in which he was a principal.

In 1998, Joslin filed a motion for issuance of a writ of execution and for foreclosure of the property that is subject to the 1984 mortgage and assignment. Joslin also sought distribution of the funds in the court registry that are attributable to McFarland's interests in the leases subject to the Joslin/FDIC mortgage and assignment. The district court issued the requested writ of execution and the U.S. Marshal for the Western District of Louisiana seized the property. The marshal advertised the sale of the property and set October 28, 1998 as the date of sale.

In the days before the sale, Jump objected to Joslin's actions. Jump argued that the FDIC's failure to reinscribe the 1984 mortgage and assignment within ten years of its execution resulted in a loss of ranking. Jump argued that the 1991 Jump judgment out of Colorado consequently had priority as to both the mineral interests and the proceeds deposited in the court registry. The court postponed the marshal's sale.

In June 1999, the court entered another judgment holding that Louisiana's 10-year reinscription law required the FDIC to reinscribe the 1984 mortgage and assignment by November 30, 1994. The FDIC's reinscription in 1995 was therefore untimely, depriving its assignee, Joslin, of priority rank. The district court ranked the Bank One judgment first, the Jump judgment second, and the FDIC's 1984 mortgage and assignment third.

Joslin appealed that decision. The Fifth Circuit explained that the FDIC's 1993 judgment did not implicitly end its continuing obligation to reinscribe the mortgage, and failure to reinscribe could deprive it of its lien. The Court rejected arguments that federal law exempted the FDIC from the obligation to reinscribe, and it affirmed the district court, finding that "Louisiana reinscription law operates to strip the FDIC of priority lien status."

But the Fifth Circuit agreed with Joslin that the Jump judgment from Colorado was not "final" when Jump prematurely registered it in Louisiana. The Jump judgment issued by the Colorado court in 1991 did not dispose of all claims, was not certified under Rule 54(b)), and did not become truly final until the Colorado suit concluded in 1997. "Because the registration of the Jump judgment was premature, it could not prime the FDIC's lien following the FDIC's reinscription of the mortgage and assignment in 1995. Although registration of the 1997 judgment would assure Jump of a claim to McFarland's assets, a resulting lien would remain subordinate to those held by Bank One and Joslin, respectively." F.D.I.C. v. McFarland, 243 F.3d 876, 892 (5th Cir. 2001) (McFarland II).

This part of the litigation got underway later in 2001 when Joslin filed a third-party complaint to annul the marshal's sale of OCS–310 to Jump. The complaint was originally filed as a miscellaneous action, 92 MC 25, but was then filed in this civil action, 01 CV

2039, Docs. 35 & 68. It argued that McFarland II held that Jump's 1991 judicial lien on OCS–310 is invalid, and that therefore the FDIC/Joslin 1993 judgment against McFarland is the only valid lien on OCS–310. Joslin claimed that it is entitled to unravel the marshal's sale as well as disgorgement of any proceeds attributable to McFarland's interest in OCS–310 that had been previously distributed to Jump. Judge Stagg, in what the parties call the "2003 order," granted Joslin's motion for partial summary judgment and declared the 1996 marshal's sale and deed to be nullities. In 2004, Judge Stagg issued another order (the "2004 order") that directed the proceeds attributable to McFarland's and Jump's interests in OCS–310 to be deposited in the registry of the court until further order. The 2004 order stated that Joslin "holds a valid mortgage and valid seizure of the runs and minerals of federal lease OCS-310," that "David L. Jump does not have a lien of any kind on the runs or minerals of federal lease OCS-310," and "Other than Joslin, no person … has a lien of any kind on the runs and minerals of federal lease OCS-310."

On motions from the parties, the court certified both the 2003 and 2004 orders as final pursuant to rule 54(b), and Jump appealed. The Fifth Circuit held that it lacked jurisdiction; the Rule 54(b) certification was not proper because the underlying orders did not adjudicate a whole claim. The 2003 order did not dispose of the entirety of Joslin's claim because it did not address his request for the recovery of the funds allegedly improperly distributed to Jump. The 2004 order was also lacking because a claim for disgorgement was still technically a part of Joslin's complaint when the district court certified the 2004 order. The appeal was dismissed. F.D.I.C. v. McFarland, 2008 WL 162882 (5th Cir. 2008).

Chevron, the operator of OCS–310, held funds attributable to McFarland's royalty interest. It filed an interpleader complaint (Doc. 117) in 2005 and was allowed to deposit the disputed funds in the registry of the court, and it has continued to make deposits. The funds now exceed $3,400,000. Chevron takes no position on the dispute, but it asks for an award of attorney fees and expenses. It states in memoranda that it is hoped that the fee claim can be resolved by stipulation among the parties. The court stated in an agreed order (Doc. 277) that Chevron was recognized as a disinterested stakeholder and that its claim for fees was preserved for future disposition.

In 2013, Joslin responded to the Fifth Circuit's 2008 decision by amending its complaint. Joslin deleted the original prayer for relief requiring Jump to "return to the registry of the court all sums which they have received pursuant to and as a result of, disbursements from the property." It also added a new prayer for relief requiring that "all of the moneys accumulated and to be accumulated in the court clerk's account related to OCS Lease 310 be distributed to [Joslin]." Joslin then moved to recertify the 2003 and 2004 orders as final judgments pursuant to Rule 54(b), and the district court granted the motion. Jump v. McFarland, 2014 WL 1347115 (W.D. La. 2014).

The Fifth Circuit again found that it lacked jurisdiction because the district court had not yet resolved the aspect of Joslin's request for disbursement of the funds allegedly improperly distributed to Jump. It added that other concerns also counseled against Rule 54(b) certification. Jump v. McFarland, 596 Fed. Appx. 256 (5th Cir. 2014).

The case returned to district court. The Estate of Rory McFarland[1] filed a motion for summary judgment. McFarland first argued that claim preclusion/res judicata made McFarland a beneficiary of the 2003 order that nullified the marshal's sale. Chief Judge Hicks denied that aspect of the motion, reasoning in part that res judicata would not entitle McFarland to the relief based on a non-final, partial summary judgment rendered in favor of a third party. Jump v. McFarland, 2018 WL 4690389 (W.D. La. 2018).

MacFarland next sought to nullify the marshal's sale as to his interest in the OCS–310 lease. The marshal's sale took place in January 1996, and McFarland filed his motion in late 2016, twenty years after the sale. Jump responded by citing two Louisiana statutes: La. R.S. 9:5622 and La. R.S. 9:5642. Section 5622 provides a two-year prescriptive period for claims arising out of "informalities of legal procedure connected with or growing out of any sale at public auction or at private sale of real or personal property made by any sheriff of the Parishes of this State, licensed auctioneer, or other persons authorized by an order of the courts of this State." La. R.S. 9:5622. Under Section 5642, "actions to set aside sheriffs' deeds are prescribed by five years, reckoning from their date." La. R.S. 9:5642. Chief Judge Hicks held: "Thus, under either statute, McFarland's alternative claim to nullify the marshal's sale as to his interest in the OCS 310 Lease could not survive a prescription defense."

McFarland next argued that the Joslin lien was not perfected until April 2, 2004 and did not attach to the first $277,774.68 of funds deposited into the court registry, thereby

---

[1] Mr. McFarland died during this litigation, and his estate was substituted as the correct party, but the estate is generally referred to herein as McFarland.

entitling McFarland to those proceeds with interest. McFarland also argued that it is entitled to a credit of $800,000 against monies due Joslin, which credit was the result of a deal struck in a bankruptcy proceeding to assign what the parties refer to as State Leases. Joslin did not respond to requests for admissions, so admitted the key facts on which this argument was based. Chief Judge Hicks, accordingly, held that summary judgment in favor of McFarland was appropriate as to the following: (1) the Joslin lien was not perfected until April 2, 2004 and did not attach to the first $277,774.68 of funds deposited into the court registry, thereby entitling McFarland to those proceeds with interest; and (2) McFarland is entitled to a credit of $800,000 against monies due Joslin as the agreed upon value of assigning the State Leases.

**Timeline**

The history recited above is complex, so this brief summary of key dates and events may be helpful:

1984: Rory McFarland borrows from the Bank of Commerce; secures the debt with a mineral lease mortgage and assignment of production.

1986: FDIC takes over the failed Bank of Commerce.

1991: David Jump gets a Colorado money judgment against McFarland; registered and recorded the judgment in Louisiana. The judgment was later found to be not final.

1993: FDIC obtains a money judgment against McFarland. The court recognizes the 1984 mortgage as first lien on covered property, but the 1984 assignment did *not* cover OCS-310. However, the 1993 judgment operates as a lien on all of McFarland's property, including OCS-310.

1996: Jump uses his Colorado judgment to foreclose on McFarland's interest in OCS-310. A marshal's sale of the interest in OCS-310 is made to Jump, who sells to American Milling in 1997. This sale was later annulled.

1997: Dennis Joslin Company obtains from FDIC the 1993 judgment (which applies to OCS-310) and the 1984 mortgage and assignment (which does not apply to OCS-310).

1998: Joslin moved to foreclose on property under the 1984 mortgage. Jump objected. The 5th Circuit held that (1) the 1984 Joslin/FDIC mortgage lost priority because it was not timely reinscribed and (2) Jump's judgment was prematurely registered in Louisiana so was subordinate to the 1993 Joslin/FDIC money judgment.

2001: Joslin filed this action to annul the 1996 marshal's sale of OCS-310 to Jump/American Milling, which would leave the Joslin/FDIC 1993 judgment as the only valid lien on OCS-310.

2003 Order: The 1996 marshal's sale and deed to Jump are declared nullities.

2004 Order: The proceeds of the McFarland/Jump interests in OCS-310 must be paid to the court registry. *No person or entity other than Joslin has a lien on the proceeds of that lease*.

2005: Chevron files interpleader and deposits McFarland's proceeds from OCS-310.

2013: Joslin amends its prayer to drop a claim against Jump to return disbursements; limits its claim to the registry funds.

2016: McFarland moves to nullify the marshal's sale of his interest in OCS-310. Judge Hicks rules that McFarland's request to annul the sale was prescribed. Declares (1) Joslin lien does not apply to the first $277,774.68 in the registry and (2) McFarland gets $800,000 credit against any money he owes Joslin.

**Summary of Positions**

McFarland claims that the marshal's sale should be nullified as to his interest, and that ownership of OCS-310 should be restored to McFarland, subject to Joslin's lien under the FDIC judgment. Joslin claims that the marshal's sale is null and that its judicial mortgage against OCS-310 pursuant to the FDIC judgment should be restored. Jump (and American Milling) claim that the marshal sale validly conveyed OCS-310 to Jump and terminated the lien of the FDIC judgment, and neither McFarland nor Joslin have a legal

basis for invalidating the marshal's sale.  American Milling claims that it is and remains the lawful owner of the interest in OCS-310 that it purchased from Jump.

**Jump and American Milling's Motion to Dismiss or for Summary Judgment against Joslin (Doc. 334)**

Jump and American Milling move to dismiss or obtain summary judgment against Joslin on the grounds that Joslin had no interest in the case at the time of the 1996 marshal's sale.  Jump and American Milling contend that the FDIC may not have transferred to Joslin the right to pursue claims that challenge the validity of the marshal's sale.  They also argue that attacks on the marshal's sale are waived because the FDIC did not take action to stop the sale at the time.  A similar argument is made in Jump and American Milling's Motion to Dismiss (Doc. 359) for lack of standing.  The court does not find the movant's arguments persuasive.  The court nullified the 1996 marshal's sale in 2003; Jump and American Milling have not convinced the undersigned that Judge Stagg's ruling should be reconsidered.  Accordingly, Jump and American Milling's Motion to Dismiss or for Summary Judgment (Doc. 334) is denied.

**Jump and American Milling's Rule 54(b) Motion to Revise the 2003 Order (Doc. 350)**

Jump and American Milling ask the court to revise the 2003 order (Doc. 74) and grant judgment in their favor against Joslin.  They incorporate their arguments made in their omnibus memorandum (Doc. 348).  The parties had an opportunity to brief those issues before the court entered the prior ruling and order, and the undersigned is not persuaded that the court should exercise its discretion under Fed. R. Civ. Pro. 54(b) to

revise that order. Accordingly, Jump and American Milling's Rule 54(b) Motion to Revise the 2003 Order (Doc. 350) is denied.

**Jump and American Milling's Motion to Dismiss all Claims Asserted by Joslin (Doc. 359)**

Jump and American Milling ask the court to dismiss all claims asserted by Joslin on the grounds that it lacks Article III or prudential standing. The argument is that the FDIC owned its judgment at the time of the marshal's sale and deed in 1996, and the FDIC did not assign its 1993 judgment to Joslin until 1997. The movants argue that the assignment did not expressly convey to Joslin a right to challenge the marshal's sale, leaving Joslin with no ability to do so.

The court has reviewed the arguments of the parties and is persuaded that Joslin does have standing. The right to pursue claims in connection with the collection and enforcement of the judgment were accessory rights that were implicitly assigned to Joslin. The court is not persuaded that the subsequent purchaser doctrine, which generally applies to claims based on damage to real property, prevents Joslin from having standing to contest the 1996 marshal's sale of McFarland's interest in OCS–310 and its effect on the FDIC's 1993 judgment has a lien on OCS–310. Accordingly, Jump and American Milling's Motion to Dismiss all Claims Asserted by Joslin (Doc. 359) is denied.

**Joslin's Motion for Partial Summary Judgment (Doc. 330)**

    **A. Introduction**

Joslin notes that there were once other parties to this case, but all have been dismissed except Joslin, Jump, McFarland, and Chevron. Joslin submits that the remaining

claims are ripe for disposition on motions for summary judgment. It presents its arguments as: First, there is no dispute between Joslin and McFarland about the amount still due Joslin under the 1993 Judgment. Second, the court already has held that Jump "does not have a lien of any kind on the runs or minerals of federal lease OCS-310"; thus, Jump's claim to such funds should be dismissed with prejudice. Third, the court has already nullified the marshal's sale of the McFarland royalty interest to Jump; thus, the court should dismiss Jump's ownership claim with prejudice. Fourth, the court should provide for the distribution of funds in the registry, based on calculations offered by Joslin, subject to its judgment becoming final and non-appealable.

### B. Jump and American Milling Claims Dismissed

Joslin argues that Jump's claims to funds in the registry have already been resolved against him. Judge Stagg ruled in 2003 that Joslin's 1993 judgment is superior in rank and burdens McFarland's royalty interest. The court declared that the marshal sale of the royalty interest to Jump/American Milling was a nullity, and in 2004 the court ruled that "Jump does not have a lien of any kind on the runs or minerals of federal lease OCS–310." Doc. 94. Joslin points to an admission by Jump that he took no steps to reregister the Colorado judgment in Louisiana after the Fifth Circuit's 2001 ruling, so Jump currently has no claims against the McFarland estate. But to the extent Jump has any claim against the McFarland royalty interest, the claim would be subject to Joslin's superior interest. For these reasons, Joslin asks that Jump's claim to any portion of the registry funds or McFarland's royalty interest be dismissed with prejudice.

Jump and American Milling have filed motions and an omnibus memorandum (Doc. 348) that attack the validity of Joslin's claim on grounds such as waiver, no transfer from the FDIC to Joslin, statute of repose, transfer of interests in the judgment to others, and sale of a litigious right. These arguments are directed at undermining the right of Joslin to attack the marshal's sale, which would presumably leave the OCS-310 interest in the hands of American Milling, which purchased the interest from Jump. Joslin's response to these arguments is found primarily in its reply (Doc. 355).

Jump and American Milling's arguments ask the court to revise the 2003 order, which the undersigned is not persuaded is warranted. The marshal's sale has been declared a nullity, and that decision will stand. That declaration means that Jump and American Milling do not have an ownership interest in OCS-310. The court has also previously held that they have no valid lien on proceeds of the mineral interest. That lack of a valid interest in the relevant property means that they have no standing or basis on which to attack the legitimacy of Joslin's judgment or related claims. The court agrees with Joslin; all claims by Jump and American Milling are dismissed with prejudice.

### C. Amount Due Under Joslin's 1993 Judgment

Joslin submits an affidavit from Randall P. Crenshaw, an independent contractor for Joslin who has worked with its account collection business, regarding the amount due under the 1993 FDIC/Joslin judgment. Mr. Crenshaw attaches a spreadsheet that takes into consideration interest, payments received and applied, and an $800,000 credit that was given in exchange for certain mineral interests from McFarland. Based on the affidavit, Joslin requests summary judgment in its favor finding that the amount due under its 1993

judgment is $3,689,709.12 through September 30, 2019, plus $435.75 per day until paid. Joslin represents that McFarland does not dispute this amount.

After entry of the 1993 judgment, the court fixed the amount of attorney fees and costs awarded to the FDIC/Joslin at $116,045.86. Joslin represents that this award has not been satisfied in whole or part. With interest calculated at the judicial rate, Joslin states that it is due an additional amount of $293,028.17 through September 30, 2019, with further interest accruing thereafter at the judicial rate. Joslin states that the total amount due to it under the 1993 judgment is $3,982,737.29 as of September 30, 2019.

Joslin submits a proposed distribution of the funds in the registry, once a final and non-appealable judgment is obtained. It asks the court to recognize that McFarland is entitled to the first $277,774.68 of funds in the registry, after which Joslin is entitled to sufficient funds to satisfy the full amounts due it under the 1993 judgment. Joslin proposes that if its 1993 judgment is not satisfied by the registry funds, the marshal should be directed to sell McFarland's royalty interest and distribute the proceeds to Joslin up to the amount necessary to satisfy its judgment, with any excess funds paid to the McFarland estate. It asks that any award made to Chevron for costs and fees proportionally reduce the distributions of the registry funds to McFarland and Joslin.

The court finds that Joslin's evidence of the amount due is sufficient proof of the amount due. Jump questions the basis for some of the information or whether it is the most accurate information. Given the history of the case, the court finds that the evidence presented is likely the best evidence available with respect to the amount due, and there is

no competing summary judgment evidence on the issue. Furthermore, Jump has no claim to the proceeds, so it lacks standing to question the calculations.

**McFarland's Motion for Summary Judgment and to Void Judgment and Annul Marshal's Sale (Doc. 332)**

McFarland asks the court to enforce the nullity ruling and reject the claims of Jump and American Milling. Relevant briefs were filed at Doc. 349 & 356. The court held above that Jump and American Milling have no valid interest in the property and that their claims should be dismissed. That renders moot many of the arguments raised by McFarland in this motion. But McFarland also asks the court to declare that he is now the legal title owner of OCS-310 due to the annulment of the marshal's sale. Any such declaration is unnecessary, as it would not lead to any benefit to McFarland beyond his current status with respect to OCS-310. McFarland's interest is subject to a valid lien by Joslin. If the funds in the registry are not sufficient to satisfy Joslin's 1993 judgment, then the court will order a marshal's sale of the OCS-310 interest. The proceeds of that sale would go first toward Joslin's judgment and, if any funds remain after the judgment is satisfied, they will go to McFarland. Accordingly, this motion is denied.

**Jump and American Milling's Motion for Summary Judgment against McFarland (Doc. 333)**

Jump and American Milling ask for summary judgment dismissing the claims of McFarland against them. Relevant briefs are at Docs. 342 & 357. They largely argue that McFarland has no valid grounds to challenge the nullity of the marshal's sale that ostensibly transferred the interest in OCS-310 to them. The dismissal of Jump and

American Milling, and the discussions above, render this motion moot. The motion is denied.

**Conclusion**

This case has a long history, but the current situation is that Joslin has a valid money judgment against McFarland and a valid lien on OCS-310. Jump previously attempted to enforce its judgment against OCS-310, but it turned out that Jump had and has no lien at all against that property. Jump has since filed multiple motions in an effort to somehow get a piece of the property to which he has no legal entitlement. McFarland has similarly raised many arguments in an effort to somehow hold on to the property that he mortgaged to secure his unpaid debt. None of the several attacks by Jump and McFarland have merit, so Joslin will be allowed to collect the funds due to it under its judgment.

For the reasons stated above, the following motions are denied: Jump and American Milling's Motion to Dismiss or for Summary Judgment against Joslin (Doc. 334); Jump and American Milling's Rule 54(b) Motion to Revise the 2003 Order (Doc. 350); Jump and American Milling's Motion to Dismiss all Claims Asserted by Joslin (Doc. 359); McFarland's Motion for Summary Judgment and to Void Judgment and Annul Marshal's Sale (Doc. 332); and Jump and American Milling's Motion for Summary Judgment against McFarland (Doc. 333).

Joslin's Motion for Partial Summary Judgment (Doc. 330) is granted. That results in the resolution of all remaining claims, with only the amount of Chevron's attorney fees and the final distribution remaining. Once Chevron's fees are fixed by agreement or court order, Joslin is directed to prepare a proposed final judgment that reflects the disposition

of the several motions addressed in this ruling and that sets forth what amounts are due to Joslin and Chevron as a result. The proposed judgment should be circulated among counsel for their approval as to form, without any prejudice to the objections of the opposing parties regarding its substance, and then submitted to chambers in Word format. After final judgment is entered, any appeals may be filed. The court will maintain the registry funds, per the 2003 Order, until "all applicable appeal delays have run and no appeals have been taken" or any appeals that are taken are resolved in a manner that allows for distribution of the funds.

    THUS DONE AND SIGNED in Shreveport, Louisiana, this the 6th day of October, 2021.

_____
Mark L. Hornsby
U.S. Magistrate Judge